UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE YOLETTE BROWN,<br><br>Plaintiff,<br><br>v.<br><br>KAISER PERMANENTE, REBECCA PELLECHI, individually, as a Supervisor with KAISER PERMANENTE,<br><br>Defendants. | No. 2:14-cv-1069 KJM CKD PS (TEMP)<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

This matter came before the court on March 16, 2016, for hearing of defendants' motion for summary judgment. Plaintiff Michelle Yolette Brown appeared at the hearing on her own behalf. Attorney Maureen Bogue appeared on behalf of the defendants.

Upon consideration of the arguments on file and at the hearing, and for the reasons set forth below, the undersigned will recommend that defendants' motion for summary judgment be granted.

## BACKGROUND

Plaintiff commenced this action on April 30, 2014, by filing a complaint and paying the required filing fee. (Dkt. No. 1.) Plaintiff filed an amended complaint on October 27, 2014. (Dkt. No. 12.) Therein, plaintiff, who is African American, alleges that the defendants discriminated, harassed, and retaliated against her based on her race in violation of Title VII of

1

the Civil Rights Act of 1964 and the California Fair Employment and Housing Act ("FEHA"). (Dkt. No. 12 at 1, 3.[1]) Defendants filed an answer on January 26, 2015. (Dkt. No. 22.)

On January 23, 2016, defendants filed the pending motion for summary judgment, setting the matter for hearing before the undersigned on February 10, 2016. (Dkt. No. 44.) After plaintiff failed to file a timely opposition or statement of non-opposition, on February 1, 2016, the undersigned continued the hearing of defendants' motion to March 16, 2016. (Dkt. No. 46.) Plaintiff filed a purported opposition on March 2, 2016, however that filing failed to address defendants' statement of undisputed facts. (Dkt. No. 47.) Defendants filed a reply on March 9, 2016. (Dkt. No. 48.)

At the March 16, 2016 hearing of defendants' motion for summary judgment, the undersigned advised plaintiff of the deficiencies found in her purported opposition, and granted plaintiff an additional two weeks to file an opposition to defendants' motion for summary judgment that included a response to defendants' statements of undisputed fact. (Dkt. No. 50.) On March 31, 2016, plaintiff filed a response to defendants' statement of undisputed facts. (Dkt. No. 54.) Defendants filed a reply on April 11, 2016. (Dkt. No. 56.)

## LEGAL STANDARDS

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to
2   support the fact." FED. R. CIV. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden
3   of proof at trial, "the moving party need only prove that there is an absence of evidence to support
4   the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).
5   See also FED. R. CIV. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, after
6   adequate time for discovery and upon motion, against a party who fails to make a showing
7   sufficient to establish the existence of an element essential to that party's case, and on which that
8   party will bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure
9   of proof concerning an essential element of the nonmoving party's case necessarily renders all
10  other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so
11  long as whatever is before the district court demonstrates that the standard for entry of summary
12  judgment . . . is satisfied."  Id. at 323.
13          If the moving party meets its initial responsibility, the burden then shifts to the opposing
14  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita
15  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the
16  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
17  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
18  admissible discovery material, in support of its contention that the dispute exists.  See FED. R.
19  CIV. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the
20  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
21  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
22  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
23  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
24  party.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).
25          In the endeavor to establish the existence of a factual dispute, the opposing party need not
26  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
27  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
28  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

In assessing a motion for summary judgment brought in the context of an employment discrimination action such as this one, it is important to recognize that "California has adopted the three-stage burden-shifting test established by the United States Supreme Court [in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)] for trying claims of discrimination . . . ." Guz v. Bechtel National, Inc., 24 Cal.4th 317, 354 (2000).

> Under the three-part McDonnell Douglas test, the plaintiff bears the initial burden of establishing a prima facie case of employment discrimination. Once the plaintiff has done so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer articulates a legitimate reason, the plaintiff must raise a triable issue that the employer's proffered reason is pretext for unlawful discrimination. The ultimate burden of persuasion remains with the plaintiff.

Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011) (citation omitted).

However, when the defendant employer has moved for summary judgment "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." Lawler v. Mountblanc North America, LLC, 704 F.3d 1235, 1242 (9th Cir. 2013) (quoting Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)). "Thus, to prevail on summary judgment, the employer is required to show either that (1) plaintiff could not

establish one of the elements of the . . . claim or (2) there was a legitimate, nondiscriminatory reason for [the adverse employment action]." Id. In proffering a legitimate, nondiscriminatory reason, the employer's burden "is one of production, not persuasion, thereby involving no credibility assessment." Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1147 (9th Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). If the employer meets its initial burden on summary judgment, the employee must then demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." Lawler, 704 F.3d at 1242 (quoting Lucent Techs., Inc., 642 F.3d at 746 (quotation omitted) (omission in original).

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants' statement of undisputed facts is supported by citations to declarations, excerpts from plaintiff's depositions, and exhibits. Defendants' statement of undisputed facts establishes the following.

Plaintiff was hired as a Nutrition Partner for defendant Kaiser Foundation Hospitals' ("Kaiser") South Sacramento Medical Center on December 14, 2009, and has been continuously employed by defendant Kaiser since. In January of 2012, plaintiff was granted a short hour position as a Nutrition Partner so that she was guaranteed to work 15 hours per week. In December of 2012, plaintiff was promoted to a 20-hour position and became a permanent employee with benefits. (Defs.' SUDF (Dkt. No. 44-6) 1, 3-6.[2])

Plaintiff has never received a warning or any discipline since she commenced working for Kaiser. Moreover, she has not lost any wages as a result of any of the acts alleged in her complaint and made more money each year from 2009 through 2013. Throughout her entire employment with Kaiser, plaintiff has been a member of the SEIU UHW-215 Union ("Union) and aspects of her employment are governed by the Collective Bargaining Agreement between the Union and Kaiser. (Defs.' SUDF (Dkt. No. 44-6) 7-10.)

/////

---

[2] Citations here are to the specific numbered undisputed fact asserted.

5

On February 7, 2012, plaintiff's supervisor, defendant Rebecca Pellechi, ("Pellechi"), informed Human Resources Consultant Cornelius Stewart ("Stewart") that she was concerned that plaintiff might be under the influence of alcohol or drugs during working hours. Stewart instructed defendant Pellechi to ask another manager to observe plaintiff in order to confirm or dispel her concern. Defendant Pellechi asked Environmental Services Manager Jeremiah Garcia ("Garcia") to observe plaintiff for signs that she might be under the influence of drugs and/or alcohol. After conducting his observation, Garcia informed defendant Pellechi that he suspected plaintiff might be under the influence of alcohol or drugs and that he did not believe it was safe for plaintiff to continue working. (Defs.' SUDF (Dkt. No. 44-6) 16-19.)

Defendant Pellechi instructed plaintiff to accompany her and Garcia to Human Resources where they met with Stewart. A union representative, Kenneth Green, was also present during this meeting. During the meeting, defendant Pellechi asked plaintiff to submit to drug and alcohol testing, plaintiff agreed, and voluntarily signed an authorization for Kaiser to have the tests performed. Defendant Pellechi advised plaintiff that she would be placed on paid administrative leave pending the outcome of the tests. Plaintiff was paid for the remainder of her shift on February 7, 2012, and for the days she was off work (February 8-10, 2012). Plaintiff returned to work on February 11, 2012. Plaintiff did not lose any wages, nor was she subjected to any disciplinary measures, as a result of the drug and alcohol testing.[3] (Defs.' SUDF (Dkt. No. 44-6) 20-21, 23-26.)

On January 20, 2012, plaintiff applied for a temporary (three-month) daytime position as a Nutrition Partner. The temporary position, however, was assigned to another Nutrition Partner. During the time period that the temporary 25-hour position was in place, plaintiff worked on average, more than 35 hours per week. On June 14, 2012, plaintiff signed and submitted a request that she be converted to a 32-hour benefited position. Union Steward Laura Macintosh informed plaintiff that she was not eligible for the requested conversion because she had not worked enough hours to qualify. (Defs.' SUDF (Dkt. No. 44-6) 29, 30, 36-37.)

---

[3] It is undisputed that plaintiff's tests were negative for drugs and alcohol.

1    Plaintiff made an internal EEO complaint to Kaiser in May of 2012.  Plaintiff also made a
2 complaint through Kaiser's employee hotline in March of 2012, though she does not recall what
3 she said in that complaint.  Kaiser investigated plaintiff's internal complaint.  Plaintiff received a
4 letter from ShaRonda Clark ("Clark") informing her that Kaiser had conducted an investigation
5 and that the investigator was unable to substantiate her allegations.  The letter regarding the
6 investigation of her complaint also advised plaintiff that she should report any conduct that she
7 considered to be retaliatory.  After receiving Clark's letter, plaintiff never reported any perceived
8 retaliation to Kaiser.  (Defs.' SUDF (Dkt. No. 44-6) 53-54, 56-59.)

9    Plaintiff alleges that defendant Pellechi accused her of stealing food in August of 2012.
10 Plaintiff denied stealing food, and no action was taken by Kaiser.  Plaintiff did not receive any
11 discipline or warning in connection with the accusation that she stole food. (Defs.' SUDF (Dkt.
12 No. 44-6) 62, 64-65.)

13    On September 27, 2012, plaintiff filed a Charge of Discrimination with the California
14 Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity
15 Commission ("EEOC").  Plaintiff listed the dates of discrimination in her charge as beginning on
16 January 20, 2012 and ending on September 27, 2012.  On January 30, 2014, the EEOC issued a
17 no cause finding, terminated its processing of the Charge and issued plaintiff a right to sue notice.
18 (Defs.' SUDF (Dkt. No. 44-6) 67-69.)

19                                                 PLAINTIFF'S OPPOSITION

20    Plaintiff's opposition to defendants' motion for summary judgment partially complies
21 with Local Rule 260(b).  In opposing the granting of summary judgment in favor of the
22 defendants, plaintiff has reproduced each fact enumerated in defendants' statement of undisputed
23 facts and expressly admitted or denied each fact.  Plaintiff, however, has not cited to evidence in
24 support of each of her denials.  Instead plaintiff simply provides bare assertions to support her
25 contention that these facts are disputed.  (Pl.'s SUDF (Dkt. No. 54) at 1-18.)

26    Nonetheless, in light of plaintiff's pro se status, the court has reviewed plaintiff's filing in
27 an effort to discern whether she actually denies any material fact asserted in defendants'
28 statement of undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate

the existence of a disputed issue of material fact with respect to any of her claims thereby defeating the pending motion for summary judgment.

ANALYSIS

**I.     Defendant Pellechi**

Plaintiff's amended complaint names as a defendant Rebecca Pellechi, plaintiff's former "immediate supervisor." (Am. Compl. (Dkt. No. 12) at 2.)  "The Ninth Circuit has consistently held that non-employer individuals cannot be held personally liable under Title VII . . . ." Washington v. Lowe's HIW Inc., 75 F.Supp.3d 1240, 1246-47 (N.D. Cal. 2014); see, e.g., Holly D. v. California Institute of Technology, 339 F.3d 1158, 1179 (9th Cir. 2003) ("[w]e have consistently held that Title VII does not provide a cause of action for damages against supervisors or fellow employees"); Pink v. Modoc Indian Health Project, Inc., 157 F.3d 1185, 1189 (9th Cir.1998) ("[C]ivil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee."); Greenlaw v. Garrett, 59 F.3d 994, 1001 (9th Cir.1995) ( "Under Title VII there is no personal liability for employees, including supervisors such as McMillin.").

"Similarly, under FEHA, [the California Fair Employment Housing Act], no individual liability attaches for claims of discrimination . . . or retaliation." Lelaind v. City and County of San Francisco, 576 F.Supp.2d 1079, 1089 (N.D. Cal. 2008) (citations omitted); see, e.g., Jones v. Lodge at Torrey Pines Partnership, 42 Cal.4th 1158, 1173 (Cal. 2008) ("nonemployer individuals are not personally liable for their role in that retaliation"); Reno v. Baird, 18 Cal.4th 640, 644 (Cal. 1998) ("The FEHA, however, prohibits only 'an employer' from engaging in improper discrimination.").

Accordingly, the undersigned finds that defendants' motion for summary judgment should be granted as to the amended complaint's claims of discrimination and retaliation against defendant Pellechi.

**II.    Race Based Discrimination**

It is well-settled that Title VII is concerned not only with intentional discrimination, but also with employment practices and policies that lead to disparities in the treatment of classes of

workers. See, e.g., Connecticut v. Teal, 457 U.S. 440, 446 (1982); Griggs v. Duke Power Co., 401 U.S. 424, 430-31 (1971). Thus, a plaintiff alleging discrimination under Title VII may proceed under two theories: disparate treatment or disparate impact. Ricci v. DeStefano, 557 U.S. 557, 577 (2009); Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986-87 (1988); The Committee Concerning Community Improvement v. City of Modesto, 583 F.3d 690, 711 (9th Cir. 2009). A person is discriminated against through disparate treatment "when he or she is singled out and treated less favorably than others similarly situated on account of race." McGinest v. GTE Service Corp., 360 F.3d 1103, 1121 (9th Cir. 2004) (quoting Jauregui v. City of Glendale, 852 F.2d 1128, 1134 (9th Cir. 1988)); see also Cornell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006). While the disparate treatment theory requires proof of discriminatory intent, intent is irrelevant to a disparate impact claim. Watson, 487 U.S. at 988; Garcia v. Spun Steak Co., 998 F.2d 1480, 1484 (9th Cir.1993). "[I]mpact analysis is designed to implement Congressional concern with 'the consequences of employment practices, not simply the motivation.'" Garcia, 998 F.2d at 1484 (quoting Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990) (citations omitted)). A prima facie case of disparate impact is typically achieved by statistical evidence demonstrating the selection bias of an employment practice. Lawrence v. Dept. of Interior, 525 F.3d 916, 921 (9th Cir. 2008); Stout v. Potter, 276 F.3d 1118, 1122 (9th Cir. 2002).

Here, plaintiff has failed to allege any facts that would suggest a disparate impact claim. Accordingly, the court will assess whether there is a dispute of material fact with respect to the amended complaint's disparate treatment claim. A plaintiff in a disparate treatment case bears the burden of alleging and proving that the defendant employer intentionally discriminated against her. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); McGinest, 360 F.3d at 1122. A plaintiff must, therefore, allege and prove discriminatory motive on the part of the defendant. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335 n. 15, (1977); Pejic v. Hughes Helicopter, Inc., 840 F.2d 667, 672 (9th Cir. 1988). A plaintiff may prove intent through either "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." Metoyer v. Chassman, 504 F.3d 919, 930

9

1  (9th Cir. 2007); Pejic, 840 F.2d at 672.  An example of direct evidence of such intent is an

2  employer's use of a racial slur or epithet.  Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138,

3  1141 (9th Cir. 2006); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 n. 7 (9th Cir.

4  2006).

5  Here, plaintiff has failed to allege any facts that would suggest the existence of direct

6  evidence of discriminatory intent.  However, unlawful discrimination may be presumed where the

7  plaintiff can show that "(1) she belongs to a protected class, (2) she was performing according to

8  her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4)

9  other employees with qualifications similar to her own were treated more favorably."  Godwin v.

10  Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (citing McDonnell Douglas, 411 U.S. at

11  802).  If plaintiff satisfies these requirements, "[t]he burden then must shift to the employer to

12  articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  Id.

13  However, if the employer provides a nondiscriminatory reason for the adverse employment

14  action, the plaintiff must then proffer evidence that the alleged nondiscriminatory reason was

15  pretextual.  Id.

16  The parties agree that plaintiff has asserted four alleged adverse employment actions: (1)

17  being subjected to drug and alcohol testing; (2) being denied the Nutrition Partner position; (3)

18  having shifts given to another employee with less seniority; and (4) not being converted to a

19  benefited position in June of 2012.  (Pl.'s Response (Dkt. No. 54) at 5.)

20  According to the allegations of the amended complaint, plaintiff's drug and alcohol testing

21  was not only "humiliating," but resulted in plaintiff being placed on three days' of paid

22  administrative leave which caused her to miss "the interview and selection process for the

23  Nutrition Partner position," for which she had applied.  (Am. Compl. (Dkt. No. 12 at 3.)  Courts

24  have found, under certain facts, that drug testing can constitute an adverse employment action.

25  See generally Perkins v. National Express Corporation, 105 F.Supp.3d 970, 976 (N.D. Cal. 2015)

26  ("Perkins having to take multiple drug tests within a nine-month period satisfies this element");

27  Figueroa v. City of New York, 198 F.Supp.2d 555, 568 (S.D. N.Y. 2002) ("evidence that the drug

28  testing policy was manipulated such that she was disproportionately chosen for testing . . . could

1  have established an adverse employment action").

2  Defendant Kaiser, however, has offered evidence that defendant Pellechi, and the
3  Environmental Services Manager, Jeremiah Garcia, suspected that plaintiff might be under the
4  influence of drugs or alcohol. (Pellechi Decl. (Dkt. No. 44-3) at 3-4; Garcia Decl. (Dkt. No. 44-
5  4) at 2.) Moreover, plaintiff testified that she does not believe that race had anything to do with
6  why she was drug tested. (Brown Depo. (Dkt. No. 51) at 40; Brown Depo. (Dkt. No. 52) at 117.)
7  Thus, even if the court found that plaintiff had suffered an adverse employment action when she
8  was tested for drugs and alcohol, plaintiff has offered no evidence that defendant's alleged
9  nondiscriminatory reason for the testing was pretextual.

10  With respect to the Nutrition Partner position, the amended complaint alleges that plaintiff
11  applied for the position and the position was "given to a Caucasian male, who had less seniority
12  than the Plaintiff." (Am. Compl. (Dkt. No. 12) at 3.) The "[f]ailure to promote is actionable
13  under Title VII." Breiner v. Nevada Dept. of Corrections, 610 F.3d 1202, 1207 (9th Cir. 2010).
14  Plaintiff, however, testified that the Nutrition Partner position was given to a Caucasian male with
15  less seniority than plaintiff because his parents "worked in administration." (Brown Depo. (Dkt.
16  No. 51) at 87.) Moreover, plaintiff testified that the hiring decision was not based on her race or
17  ethnicity. Id. In responding to defendants' statement of undisputed facts, plaintiff responded that
18  these facts were "UNDISPUTED." (Pl.'s Resp. (Dkt. No. 54) at 9.) Defendant's evidence, in the
19  form of plaintiff's own testimony, establishes a legitimate, nondiscriminatory reason for
20  defendant's conduct.

21  In a similar vein, plaintiff's allegation that she suffered an adverse employment action
22  when shifts were given to another employee with less seniority is belied by plaintiff's own
23  deposition testimony and response to defendants' statement of undisputed facts. Plaintiff testified
24  that the only incidents in which her seniority was violated was when defendant Pellechi gave
25  plaintiff's coworker, "Simi," shifts plaintiff believed should have gone to plaintiff. (Brown Depo
26  (Dkt. No. 52) at 24, 25 & 28.)

27  "[T]he loss of opportunity to work overtime can amount to an adverse employment
28  action." Vance v. Ball State University, 646 F.3d 461, 475 (7th Cir. 2011); see also Reinhardt v.

11

1    Albuquerque Public Schools Bd. of Educ., 595 F.3d 1126, 1133 (10th Cir. 2010) ("This is not to
2    say that a denial of overtime opportunity is always a materially adverse action, but under these
3    facts, we think a reasonable employee might have been dissuaded from advocating for special
4    education students knowing that her workload and salary would be reduced.").

5          Plaintiff, however, testified that these additional shifts went to Simi "because she was
6    Indian and would do anything [defendant Pellechi] said."  (Brown Depo. (Dkt. No. 52) at 26.)
7    That allegation, however, is based entirely on plaintiff's subjective belief.  (Brown Depo. (Dkt.
8    No. 51) at 98.)  The only evidence plaintiff supplies is her "gut feeling" that defendant Pellechi
9    gave Simi preferential treatment because of her Indian ancestry.  (Brown Depo. (Dkt. No. 52) at
10   27; Pl.'s Resp. (Dkt. No. 54) at 9.)

11         Plaintiff's subjective and speculative belief that the she was discriminated against,
12   however, fails to create a dispute over a material fact.  See Ray v. Tandem Computers, Inc., 63
13   F.3d 429, 434 (5th Cir. 1995) ("Her subjective belief that discriminatory intent motivated these
14   actions is insufficient to establish a material question of fact regarding Tandem's motives.");
15   Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1459 (9th Cir. 1985) ("Mere assertions of
16   discriminatory motive and intent . . . are inadequate."), overruled on other grounds by Kennedy v.
17   Allied Mut. Ins. Co., 952 F.2d 262 (9th Cir. 1991)); Adetuyi v. City and County of San Francisco,
18   63 F.Supp.3d 1073, 1080 (N.D. Cal. 2014) ("Mere assertions that a defendant had a
19   discriminatory motive or intent in taking an adverse action are inadequate to defeat summary
20   judgment unless supported by substantial factual evidence."); Arya v. CalPERS, 943 F.Supp.2d
21   1062, 1070 (E.D. Cal. 2013) ("subjective belief that defendant's agents intentionally
22   misrepresented his eligibility for the ARSC program because they identified his accent and last
23   name as being Iranian and sought to discriminate against him based on his national origin is
24   entirely speculative").

25         The last potential adverse employment action identified by the parties is the amended
26   complaint's allegation that plaintiff was not converted to a benefited position in June of 2012.
27   The amended complaint alleges that in June of 2012, plaintiff discussed with defendant Pellechi
28   "her eligibility for a permanent position and requested an additional five hours per week so she

would have a twenty (20) hour work week." (Am. Compl. (Dkt. No. 12) at 5.) Although plaintiff "was eligible for such increase in hours," defendant Pellechi "rejected" plaintiff's request. Id.

Plaintiff, however, testified at her deposition that she was informed by a Union Steward that her request was denied because plaintiff had not worked a sufficient number of hours to qualify for the requested increase. (Brown Depo. (Dkt. No. 51) at 92; Brown Depo. (Dkt. No. 52) at 29.) Plaintiff also testified that she does not believe that she was denied the requested increase in hours because of her race. (Id. at 91, 124.) Moreover, defendant Kaiser has provided a declaration from defendant Pellechi stating that plaintiff's request was denied "because she had not worked the requisite number of hours to qualify" for the position as required by the contract between Kaiser and the Union. (Pellechi Decl. (Dkt. No. 44-3) at 5.) Thus, there is no evidence before the court to dispute defendant's legitimate nondiscriminatory reason for denying plaintiff's request.

Accordingly, the undersigned finds that defendants' motion for summary judgment should be granted as to the amended complaint's discrimination claim.

### III. Hostile Work Environment

Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To state a viable hostile work environment claim under Title VII, a plaintiff must allege facts demonstrating "(1) that [s]he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1109-10 (9th Cir. 2000) (quoting Pavon v. Swift Trans. Co., Inc., 192 F.3d 902, 908 (9th Cir. 1999)). While Title VII "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult," it is not "a general civility code." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986); see also Onscale v. Sundowner Offshore Serv.s, Inc., 523 U.S. 75, 80 (1998); Fargher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Indeed, the alleged conduct must be so extreme that it effectively changes the terms and conditions of employment. Fargher, 524 U.S. at 65.

13

Further, the plaintiff's allegations must show that not only the plaintiff felt that the environment was hostile, but also that the environment was objectively hostile. Harris, 510 U.S. at 20; Dawson v. Entek Intern., 630 F.3d 928, 938 (9th Cir. 2011). Alleged conduct is beyond Title VII's purview when a reasonable person would not find the conduct to be hostile or abusive. Onscale, 523 U.S. at 81; Dawson, 630 F.3d at 938. A reasonable person rarely finds an isolated incident of harassment to be such a serious act of discrimination. Johnson v. Riverside Healthcare, 534 F.3d 1116, 1123 (9th Cir. 2008); Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 1999). However, "the more outrageous the conduct, the less frequent must it occur to make a workplace hostile." Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998) (citing Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991)).

Here, plaintiff testified at her deposition that the only person employed by defendant Kaiser that ever made an offensive comment to her was plaintiff's coworker, Jill Blackwell, who allegedly called plaintiff a "bitch" between "one and ten" times, and said plaintiff "was on crack." (Brown Depo. (Dkt. No. 51) at 15-18.) Plaintiff, however, does not believe these comments were "race based." (Brown Depo. (Dkt. No. 52) at 49.)

As noted above, Title VII is not a general civility code. "The Supreme Court has cautioned that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting Faragher, 524 U.S. at 788). Moreover, where "the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent, i.e. that the employer knew or should have known of the harassment but did not take adequate steps to address it." Swinton v. Potomac Corp., 270 F.3d 794, 803 (9th Cir. 2001). Here, plaintiff has offered no evidence that defendant Kaiser was negligent.

Accordingly, for the reasons set forth above, the undersigned finds that defendants' motion for summary judgment should also be granted as to the amended complaint's hostile work environment claim.

////

////

IV. **Retaliation**

A plaintiff may establish a prima facie case of retaliation under Title VII or the FEHA by showing that (1) she engaged in a protected activity (i.e., that she protested or otherwise opposed unlawful employment discrimination directed against a protected employee), (2) the employer subjected her to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. See Univ. of Texas S.W. Med. Ctr. v. Nassar, — U.S. —, —, 133 S. Ct. 2517, 2534 (2013) ("a plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"); Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007) (same); Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 506 (9th Cir. 2000) (same); Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028, 1042 (2005). "It is not necessary, however, that the employment practice actually be unlawful; opposition clause protection will be accorded 'whenever the opposition is based on a 'reasonable belief' that the employer has engaged in an unlawful employment practice.'" Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994) (quoting EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983)).

Plaintiff alleges that she was retaliated against in the following ways: (1) defendant Pellechi accused her of stealing food; (2) defendant Pellechi told plaintiff that she would not get a union steward position; and (3) defendant Pellechi asked plaintiff to submit to a drug test. (Pl.'s Resp. (Dkt. No. 54) at 15.)

As noted above, in May of 2012 plaintiff filed an EEOC complaint, (Am. Compl. (Dkt. No. 12) at 3), and in August of 2012, defendant Pellechi accused plaintiff of stealing food. (Brown Depo. (Dkt. No. 52) at 17.) "'To constitute an adverse employment action . . . retaliation need not be severe and it need not be of a certain kind.'" Dahlia v. Rodriguez, 735 F.3d 1060, 1078 (9th Cir. 2013) (quoting Coszalter v. City of Salem, 320 F.3d 968, 975 (9th Cir. 2003)). "[T]he proper inquiry is whether the action is 'reasonably likely to deter employees from engaging in protected activity.'" Id. (quoting Coszalter, at 976)); see also Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context

15

1 means it well might have dissuaded a reasonable worker from making or supporting a charge of
2 discrimination").

3 According to plaintiff's deposition testimony, in August of 2012, plaintiff was working an
4 evening shift when defendant Pellechi informed plaintiff that "we have a meeting tomorrow and I
5 think you better get a [union] steward." (Brown Depo. (Dkt. No. 52) at 18.) The following day,
6 plaintiff attended a meeting with defendant Pellechi and union steward Alex Martinez. (Id. at
7 19.) Defendant Pellechi asked plaintiff if she remembered a meeting in which defendant Pellechi
8 said "there's no stealing allowed in the department." (Id. at 20.) Plaintiff responded that she did
9 remember that meeting. (Id.)

10 Defendant Pellechi then said "[w]ell, I caught you . . . . I caught you stealing," and handed
11 plaintiff a picture of plaintiff with something in her hand. (Id.) Plaintiff then said, "[t]his is a
12 taco salad that I purchased in the cafeteria." (Id.) Defendant Pellechi then said, "[o]h, my god. I
13 forgot. [Plaintiff] buys a taco salad every Wednesday." (Id.) Defendant Pellechi then left the
14 meeting. (Id. at 21.) Plaintiff has identified these facts as "undisputed." (Pl.'s Resp. (Dkt. No.
15 54) at 16.) Moreover, plaintiff did not receive a warning or any discipline in connection with this
16 incident.[4] (Brown Depo. (Dkt. No. 52) at 18.)

17 Presented with these facts, the undersigned cannot find that the defendant's actions were
18 reasonably likely to deter an employee from engaging in protected activity. See generally
19 Burlington Northern, 548 U.S. at 68 ("employee's decision to report discriminatory behavior
20 cannot immunize that employee from those petty slights or minor annoyances that often take
21 place at work and that all employees experience"); Pennington v. City of Huntsville, 261 F.3d
22 1262, 1267 (11th Cir. 2001) ("decision to reprimand or transfer an employee, if rescinded before
23 the employee suffers a tangible harm, is not an adverse employment action"); Kortan, 217 F.3d at
24 1113 (no adverse employment action where plaintiff "was not demoted, was not stripped of work
25 responsibilities, was not handed different or more burdensome work responsibilities, was not
26 fired or suspended, was not denied any raises, and was not reduced in salary or in any other

---

[4] Plaintiff does not believe that she was accused of theft because of her race. (Brown Depo. (Dkt. No. 51) at 112.)

16

1    benefit"); Breaux v. City of Garland, 205 F.3d 150, 157 (5th Cir. 2000) ("this court has held that
2    the following are not adverse employment actions: (1) mere accusations or criticism; (2)
3    investigations; (3) psychological testing; (4) false accusations; and (5) polygraph examinations
4    that do not have adverse results for the plaintiff").

5        With respect to plaintiff's allegation that defendant Pellechi told her she would not get a
6    union steward position, this alleged adverse employment action occurred in 2011, prior to the
7    time plaintiff filed her EEOC complaint. (Brown Depo (Dkt. No. 52) at 15.) Likewise, defendant
8    Pellechi asked plaintiff to submit to drug and alcohol testing in February of 2012, several months
9    prior to plaintiff's filing of her EEOC complaint. Even assuming arguendo that these incidents
10   constituted adverse employment actions, there can be no causal link between the protected
11   activity and the defendants' action, as defendants' actions occurred prior to the protected activity.

12       Accordingly, for the reasons set forth above, the undersigned finds that defendants'
13   motion for summary judgment should also be granted as to the amended complaint's retaliation
14   claim.

15       CONCLUSION

16       Given the evidence presented by the parties on summary judgment, there does not appear
17   to be even a scintilla of evidence that defendants violated plaintiff's rights under Title VII or the
18   FEHA. See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of
19   evidence or evidence that is merely colorable or not significantly probative does not present a
20   genuine issue of material fact" precluding summary judgment); Summers v. A. Teichert & Son,
21   Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) ("a mere scintilla of evidence will not be sufficient to
22   defeat a properly supported motion for summary judgment; rather, the nonmoving party must
23   introduce some significant probative evidence tending to support the complaint").

24       In the absence of any evidence of a disputed issue of material fact regarding plaintiff's
25   claims, the court finds that defendants are entitled to summary judgment in their favor on all of
26   plaintiff's claims. After adequate time for discovery, plaintiff has failed to make a showing
27   sufficient to establish the existence of any disputed issue of fact regarding elements essential to
28   her claims and on which she would bear the burden of proof at trial.

Accordingly, IT IS HEREBY RECOMMENDED that:

    1. Defendants' January 13, 2016 motion for summary judgment (Dkt. No. 44) be granted; and

    2. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 26, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

BVD\brown1069.msj.f&rs